# In the United States Court of Federal Claims

No. 17-517

Filed: May 31, 2017

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ALLTRAN EDUCATIONS, INC., | Preliminary Injunction, Rule of the United States Court of Federal Claims 65(d). |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| CBE GROUP, INC., PREMIERE CREDIT OF NORTH AMERICA, LLC, GC SERVICES LIMITED PARTNERSHIP, FINANCIAL MANAGEMENT SYSTEMS, INC., VALUE RECOVERY HOLDINGS, LLC, and WINDHAM PROFESSIONALS, INC., | |
| Intervenor-Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CONTINUATION OF PRELIMINARY INJUNCTION**

On May 25, 2017, the court became aware of press reports indicating that James Runcie, Chief Operating Officer of the Office of Federal Student Aid, Department of Education, resigned rather than testify before the House Oversight Committee about approximately $3.86 billion in fiscal year 2016 that was erroneously paid under the Department of Education's student loan program and approximately $2.21 billion in Pell grants. Court Exhibit A.

In addition, the court became aware of another recent press report, based on a Consumer Financial Protection Bureau Report, concluding that, "[t]he value added by the private collection agencies working for the Department of Education is highly questionable[,] but unquestionably expensive. Student loan borrowers deserve to understand their options and be set up for success. Taxpayers deserve to get their money's worth." Court Exhibit B.

Neither of these relevant developments were brought to the attention of the court by the Department of Justice attorneys representing the Department of Education in the above captioned bid protest cases. Of course, none of the counsel of record for the private debt collection

companies did so either, because these reports belie numerous representations to the court about the "so-called" harm to the student debtors and the public fisc from the preliminary injunction pending in this case. Nor has the Department of Justice or Department of Education responded to the court's May 22, 2017 inquiry of Dr. Patrick Bradfield, Head of Contracting at the Office of Federal Student Aid, regarding whether the Department of Education could allow Progressive Financial, Inc., Collection Technology, Inc., Performant Recovery, Inc. and Van Ru Credit Corporation to continue servicing prior accounts until the Department of Education *completes* the proposed corrective action

In addition, on May 26, 2017, the *New York Times* published an article indicating that "the Administration is considering moving responsibility for overseeing more than $1 trillion in student debt from the Education Department to the Treasury Department." Court Exhibit C. If so, the bid protests before the court will become moot. For these reasons, the preliminary injunction will remain in place to preserve the *status quo* until the viability of the debt collection contracts at issue is resolved. *See Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984) ("The function of preliminary injunctive relief is to preserve the *status quo* pending a determination of the action on the merits.").

**IT IS SO ORDERED.**

<div style="text-align: right;">

s/Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**

</div>

# Court Exhibit A

POLITICO

James Runcie resigned on Tuesday night after defying Betsy DeVos' directive to testify before the oversight panel. | AP Photo

# GOP threatens to subpoena Education Dept. official who quit

By **MICHAEL STRATFORD** | 05/25/2017 04:29 PM EDT

Republicans on the House Oversight Committee on Thursday threatened to subpoena the head of the Education Department's student financial aid office who resigned this week after a clash with Education Secretary Betsy DeVos.

James Runcie resigned on Tuesday night after defying DeVos' directive to testify before the oversight panel about erroneous payments in the student loan and Pell grant programs. In an internal memo about his resignation as chief operating officer of the Office of Federal Student Aid, Runcie alluded to a range of simmering management issues at the department.

"The issuing of a subpoena is still an open item," Rep. Mark Meadows (R-N.C.), the chairman of the House oversight subcommittee holding Thursday's hearing told reporters. "It's important that we hear from Mr. Runcie and at least get some of his perspective on some of these issues."

Meadows opened the hearing by saying that Runcie's refusal to testify was a "slap in the face" to taxpayers, who he said paid Runcie more than $430,000 in bonuses since 2010.

House Oversight Chairman Jason Chaffetz (R-Utah) "still has questions that Mr. Runcie needs to answer," said his spokeswoman, MJ Henshaw. "Hopefully that's done voluntarily. If not, we will explore the option of a subpoena."

Jay Hurt, the chief financial officer of the department's Office of Federal Student Aid, testified in place of Runcie on Thursday. GOP lawmakers pressed Hurt about the increase in the agency's erroneous student loan and Pell grant payments, which both rose last year.

The Education Department estimated that improper payments for student loans in fiscal year 2016 were $3.86 billion, up from $1.28 billion the previous year. Improper payments in the Pell grant program increased from $562 million to $2.21 billion over the same time period, according to the department. None of those met the department's target benchmark for such figures.

Hurt said that the increase was due in part to a change in how the department calculated improper payments. He also warned that next year's improper payment rate will again increase because of a months-long suspension of an online tool that helps borrowers avoid mistakes by automatically inputting their tax information.

The agency's Inspector General, Kathleen Tighe, testified that while the revised calculations were "more realistic," the department still needs to "intensify its efforts to identify and address internal controls and oversight to address the root causes" of improper payments.

GOP lawmakers on the panel said they were concerned that Runcie and Hurt continued to receive bonuses even as the improper payment rates for student aid programs increased in recent years.

Runcie's resignation memo suggests that political appointees at the department had been micromanaging his office, which he said had been stretched too thin. He said in an email to POLITICO that he resigned because of differences at the department between "operational leaders" like himself and political appointees.

### Top Education Dept. official resigns after clash with DeVos
By **MICHAEL STRATFORD** and **KIMBERLY HEFLING**

But Meadows blasted that assertion on Thursday. He said that Runcie "may be upset that the secretary is micromanaging" but "anybody looking over your shoulder when you're losing $3.6 billion might be considered micromanaging. I call it proper oversight."

Republicans on the committee also said that Runcie's resignation on Tuesday night came after they had already threatened to subpoena him and gave him 20 days to respond to a request to appear at the hearing.

Meadows said he had previously been frustrated with attempts to get Runcie to testify before the committee.

"He has shown a willingness to not testify before Congress in the past. I'm not saying that that's where it is today," Meadows said. "I want to take him at his word that perhaps he had a personal conflict, but we were willing to accommodate. And what we found was is that he chose to resign instead of coming before Congress."

Democrats on the panel, meanwhile, steered clear of the Runcie resignation. They instead criticized DeVos' proposal to overhaul student loan servicing and slammed the department for not doing enough to guard against student debt relief scams.

Sens. Elizabeth Warren (D-Mass.) and Patty Murray (D-Wash.) said earlier this week that they're concerned that Runcie's resignation appeared to come after political interference from DeVos. Warren called on Congress "to get to the bottom of what's going on here."

# Court Exhibit B

# Department of Education must end the billion-dollar student loan collection boondoggle

By Persis Yu, opinion contributor - 05/22/17 10:20 AM EDT

In the last month, the contracting process for companies vying to be one of the U.S. Department of Education's debt collectors has spiraled into chaos.

Companies that didn't make the final cut or were fired for misleading student loan borrowers are suing the Department, and the judge overseeing the litigation has issued an order preventing the Department from assigning new accounts to debt collectors, leading to claims that collection on defaulted student loans has ground to a halt.

This chaos is not serving taxpayers or student loan borrowers. The Department of Education should end its sweetheart deal with collection agencies and find a better way to work with defaulted student loan borrowers.

According to collection industry insiders, the Department of Education contract is "[t]he most sought-after contract within this industry" because of the ever-increasing volume of student loan debt that is extremely difficult to discharge in bankruptcy. In 2014, the federal government paid over $1 billion to private collection agencies. But are student loan borrowers and taxpayers getting what they pay for?

New data from the Consumer Financial Protection Bureau (CFPB) shows that they are not.

The Higher Education Act provides student loan borrowers in default with two ways to get their loans back into good standing: consolidation and rehabilitation.

Just released CFPB data shows that the rehabilitation program, where borrowers make a series of payments in order to cure their defaulted loans, is not creating a sustainable path to student loan repayment. Over a third of borrowers who rehabilitate their loans will re-default within the first two years.

This is likely because, after completing their nine monthly rehabilitation payments, a substantial number of borrowers never successfully transition into one of the affordable income-driven repayment (IDR) plans.

In contrast, the vast majority (95 percent) of the reported student loan borrowers who chose to consolidate to get out of default (taking out a new loan to pay off of the old

one), are still in good standing a year out. When borrowers consolidate out of default, they are immediately placed into a repayment plan, usually an IDR plan.

Moreover, a Treasury Department pilot project found that when properly counseled, more borrowers choose consolidation over rehabilitation. Yet 70 percent of borrowers whose student loans are collected by private collection agencies choose rehabilitation.

Why? One word: commissions.

The Department of Education typically pays collection agencies $1,710 if they can get a borrower to complete a rehabilitation plan but only $150 if they work with a borrower to consolidate the defaulted loans.

What's more, borrowers do not even need to work with a collection agency to consolidate their loans; they can go straight to studentloans.gov and do it.

Most of the work that is done by collection agencies can be automated or easily brought in-house. Just as borrowers can use studentloans.gov to consolidate their loans, that same tool could be used to establish rehabilitation plans.

The only functions that would be lost without collection agencies are calling and counseling borrowers. The value of making calls is questionable: Treasury found that of the 21,000 calls it initiated in its pilot project, less than 3 percent were ever even answered.

And collection agencies are doing a terrible job at counseling borrowers, as is evidenced by the wide disparity between the program collectors push borrowers into (rehabilitation) and the success of that program. And, in some cases, such as when borrowers dispute the amount owed, debt collectors simply transfer those loans back to the Department of Education.

Additionally, collection agencies routinely violate consumer protection laws. Debt collection calls generate more complaints to the CFPB than *any* other type of financial product or service. Recently, the Federal Trade Commission fined one of the Department of Education's debt collectors — GC Services — $700,000 for making harassing phone calls to student loan borrowers and threatening illegal actions.

The value added by the private collection agencies working for the Department of Education is highly questionable but unquestionably expensive. Student loan borrowers deserve to understand their options and be set up for success. Taxpayers deserve to get their money's worth.

The Department of Education should end this billion dollar boondoggle to enrich private collection agencies and instead set up a system where borrowers can get unbiased and accurate information to resolve their student loan defaults.

*Persis Yu is the director of National Consumer Law Center's Student Loan Borrower Assistance Project.*

# Court Exhibit C

The New York Times | https://nyti.ms/2s10GHH



WITH FOUNDER
ANDREW ROSS SORKIN

# Trump Administration Considers Moving Student Loans from Education Department to Treasury

By JESSICA SILVER-GREENBERG, STACY COWLEY and PATRICIA COHEN    MAY 25, 2017

The Trump administration is considering moving responsibility for overseeing more than $1 trillion in student debt from the Education Department to the Treasury Department, a switch that would radically change the system that helps 43 million students finance higher education.

   The potential change surfaced in a scathing resignation memo sent late Tuesday night by James Runcie, the head of the Education Department's federal student aid program. Mr. Runcie, an Obama-era holdover, was appointed in 2011 and reappointed in 2015. He cut short his term, which was slated to run until 2020, after clashing with the Trump administration and Betsy DeVos, the education secretary, over this proposal and other issues.

Elizabeth Hill, a spokeswoman for the Education Department, declined to comment on his departure or on talks with Treasury.

"The secretary is looking forward to identifying a qualified candidate to lead and restore trust in F.S.A.," Ms. Hill said, referring to federal student aid.

A shift in handling federal student aid is being weighed as the Trump administration and Ms. DeVos consider overhauling the Department of Education. Mr. Trump's proposed budget for 2018 slashes funding for the department by nearly 50 percent. Moving one of its core functions to Treasury would significantly diminish the agency's power. It could also alter the mission of the student loan program.

"The reason the federal student aid programs live within the Education Department is because that's the agency that has as its goal increasing educational opportunities within the United States," said David Bergeron, who left the Education Department in 2013 after 35 years. "That is not the Treasury Department's goal. Its job is to pay for the business of the government."

Scrapping or shrinking the Education Department has long been a popular Republican goal, dating from the Reagan administration. President Trump embraced the idea, saying in his book "Crippled America" that the department should either be eliminated or have "its power and reach" cut. In February, a House Republican introduced a bill to terminate the agency.

In his resignation memo, a copy of which was obtained by The New York Times, Mr. Runcie said that senior members of his department had met that day with Treasury officials and discussed "holding numerous meetings and retreats" to outline a process for "transferring all or a portion" of the student aid office's functions to the Treasury Department.

"This is just another example of a project that may provide some value but will certainly divert critical resources and increase operational risk in an increasingly challenging environment," Mr. Runcie wrote.

Moving the federal student aid unit probably would require congressional action. But even in a fractured Congress, it could win bipartisan support.

The federal student aid office has been a lightning rod for criticism over the effectiveness and expense of its debt collection programs. Several government audits took issue with the department's handling of its student aid programs. In 2015, for example, the Government Accountability Office faulted the agency for not doing enough to make students aware of all their repayment options. The Consumer Financial Protection Bureau has also pressed for changes in how the department manages its loan servicers.

The Education Department backs and originates $1.4 trillion in student loans. Since 2010, the government has directly funded the loans, cutting out the private lenders that previously doled out government-backed aid. But the agency outsources the work of collecting payments on the loans, and the companies it works with have a troubled record.

During the Obama administration, the idea of shifting responsibility for the student loan program to the Treasury Department had some supporters. As the number and dollar amount of student loans grew, the Education Department found itself managing more than a trillion dollars in assets, a portfolio bigger than most banks.

"The Education Department is a policy shop with a trillion-dollar bank on the side," said Rohit Chopra, a former student loan ombudsman at the Consumer Financial Protection Bureau who also briefly worked for the Education Department.

For students, the move under consideration could simplify the convoluted process of applying for federal student aid and repaying loans. A growing number of borrowers are using income-based repayment plans, which require students to submit information on their earnings. Putting federal student aid in the same department as the Internal Revenue Service could make that easier. (A tool intended to help students automatically import their tax information has been disabled for months because of a security problem.)

"I think it's a good idea," said James Kvaal, a former deputy under secretary of education in the Obama administration. "Because the Education Department and the I.R.S. are separated, we've built these clunky systems that get in the way of

achieving the goals of the income-based program. Linking the two would be much easier for students, and have stronger integrity for taxpayers."

But critics, including a high level official from Mr. Obama's Treasury Department, warned that the move could hurt students.

"Moving the agency that is supposed to provide stewardship for student loan borrowers to an agency that is working on a shoestring with a skeletal crew strikes me as a recipe for a policy disaster," said Sarah Bloom Raskin, who was the deputy Treasury Secretary under President Obama.

Others worry about how students would fare under the Treasury Department.

The Treasury Department recently conducted a pilot project in which its employees tried to collect on defaulted loans, a job the Education Department contracts out to private companies.

The experiment, which began in mid-2015, did not end well.

The Treasury Department hoped to increase collection rates and help borrowers better understand their repayment options. It failed on both goals. A control group of private collectors recovered more money and got more borrowers out of default.

For now, even without the shift, some at the federal student aid office are rattled, according to one person who requested anonymity because he was not authorized to speak publicly. After Mr. Runcie resigned, at least one employee was in tears, the person said.

A version of this article appears in print on May 26, 2017, on Page A19 of the New York edition with the headline: Plan Would Shift Student Loans to Treasury.

© 2017 The New York Times Company